# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NANCY CARROLL, | |
| Plaintiff, | CIVIL ACTION NO. 3:12-CV-2308 |
| v. | (JUDGE CAPUTO) |
| LACKAWANNA COUNTY, et al., | |
| Defendants. | |

## MEMORANDUM

Presently before the Court is a Motion for Summary Judgment (Doc. 47) filed by Defendants Lackawanna County, Corey O'Brien, Michael Washo, and A.J. Munchak (collectively, "Defendants"). In her Third Amended Complaint ("Complaint"), Plaintiff Nancy Carroll ("Plaintiff") asserts that she was more severely disciplined than her male counterparts, alleging a gender discrimination claim in violation of Title VII of the Civil Rights Act ("Title VII"), the Pennsylvania Human Relations Act ("PHRA"), and the Equal Protection Clause of the Fourteenth Amendment. Plaintiff also raises a stigma-plus due process claim. In their Motion for Summary Judgment, Defendants assert that Plaintiff failed to establish a prima facie case of gender discrimination and that even if she did, she failed to establish that the legitimate, non-discriminatory reason they proffered for the disciplinary action was pretextual. Defendants also argue that Plaintiff's stigma-plus claim fails for lack of a false and stigmatizing statement, lack of an actionable and "roughly contemporaneous" "plus," and lack of a request or denial of a name-clearing hearing. Because Plaintiff has failed to present evidence sufficient to establish (1) a prima facie case of gender discrimination, (2) that the proffered rationale for her demotion was merely pretextual, and (3) that false and stigmatizing statements were disseminated by Defendants, Defendants' Motion for Summary Judgment will be granted.

## I. Background

The facts presented in the summary judgment record, viewed in the light most

favorable to Plaintiff, are as follows. Plaintiff Nancy Carroll was first hired at the Lackawanna County Prison in June of 1993 as a Corrections Officer. (Doc. 54-3, Carroll Tr. at 9:24-10:4.) After working as a Corrections Officer for approximately five (5) years, Plaintiff was promoted to a management position as a Records Officer. (*Id.* at 10:5-10:12.) Plaintiff continued to rise in the ranks and was eventually promoted to a Lieutenant position, which was also a management position. (*Id.* at 12:9-12:13.) As a Lieutenant, Plaintiff was responsible for "[m]aintaining the care and custody and control of the population of the inmates," as well as administrative and clerical work. (*Id.* at 12:24-13:5; *see also* Doc. 48-19, Defs.' Ex. S, Job description for Corrections Lieutenant.) This entailed greater responsibility, in particular, supervisory responsibility, than Corrections Officers. (*Compare* Doc. 48-19, Defs.' Ex. S, Job description for Corrections Lieutenant, *with* Doc. 48-20, Defs.' Ex. T, Job description for Corrections Officer.)

On or about August 8, 2010, inmate Michael Simonson, a convicted murderer, viciously beat and stomped inmate Nicholas Pinto nearly to death (the "Pinto attack"). (Doc. 53-2, Pl.'s Ex. B at 1, Arbitration Award concerning 3 male EEs involved in Pinto attack.) Inmate Simonson was classified as an administrative custody inmate and inmate Pinto was classified as a protective custody inmate. (Doc. 54-3, Carroll Tr. at 51:20-52:11.) On the day of the Pinto attack, administrative custody inmates, including inmate Simonson, were housed in the Delta Unit. (*Id.* at 51:20-52:5; *see also* Doc. 49, Defendants' Statement of Undisputed Facts ("DSUF") ¶ 12.) It is the policy of the Lackawanna County Prison (the "Prison") to prohibit administrative custody inmates from having any contact with protective custody inmates under any circumstances. (Doc. 54-3, Carroll Tr. at 33:17-35:16, 52:17-52:22; 105:4-106:14; *see also* Doc. 49, DSUF ¶ 11.)

Three Corrections Officers ("COs") were on duty in the Delta Housing Unit on the day of the Pinto attack: COs Michael Mallick, Jason Talutto, and Robert Jesso. (Doc. 54-3, Carroll Tr. at 42:19-43:6; 104:20-105:3; *see also* Doc. 49, DSUF ¶ 14.) Plaintiff was the Shift Commander of the Prison on duty that day. (Doc. 49, DSUF ¶ 3.) Although Plaintiff did not personally witness the Pinto attack, she arrived at the scene after it occurred and at some

point that day, called former Warden Janine Donate to ask her who Plaintiff should call in the wake of the Pinto attack. (Doc. 54-3, Carroll Tr. at 86:18-90:23.) Plaintiff did not order anyone to preserve the scene of the crime after the Pinto attack. (Doc. 49, DSUF ¶ 28.) However, when she noticed the Prison staff cleaning up the scene of the crime, she ordered them to stop. (Doc. 54-3, Carroll Tr. at 89:20-90:1.)

As a result of the Pinto attack, CO Mallick was suspended for sixty (60) days for abandoning his post when the protective custody inmates were returning to Delta Unit. (Doc. 49, DSUF ¶ 32.) This suspension was reduced to thirty (30) days following a grievance arbitration. (*Id.*; *see also* Doc. 53-2, Pl.'s Ex. B at 13.) COs Jason Talutto and Robert Jesso were suspended for five (5) days for being inattentive and not properly securing the inmates in Delta Unit in their cells. (Doc. 49, DSUF ¶¶ 34, 36.) These suspensions were sustained following a grievance arbitration. (*Id.*; *see also* Doc. 53-2, Pl.'s Ex. B at 13.)

On November 17, 2010, former Prison Warden Janine Donate resigned. (Doc. 49, DSUF ¶ 38.) Effective November 22, 2010, DOC Deputy Superintendent Vincent Mooney served as the Prison's Interim Warden. (*Id.* ¶ 39.) DOC Deputy Superintendent Mooney held this position until June 27, 2011, when the current Warden Robert McMillan was appointed. (*Id.* ¶ 40.)

On November 19, 2010, Plaintiff was provided with written notice of a *Loudermill* hearing[1] that was scheduled for her on December 9, 2010, at which the Pinto attack would be discussed. (Doc. 49, DSUF ¶¶ 46, 50.) This hearing was later postponed until December 14, 2010. (*Id.* ¶¶ 47-48.) Interim Warden Mooney attended this hearing. (*Id.* ¶ 49.) After the hearing and after reviewing all the documents provided to him relating to the Pinto attack, Interim Warden Mooney concluded that Plaintiff (1) "showed poor leadership ability," (2)

---

[1] A *Loudermill* hearing is a due process hearing where an employee is entitled to the notice of the charges against her, an explanation of the employer's evidence, and an opportunity to present her side of the story. *Schmidt v. Creedon*, 639 F.3d 587, 596-97 (3d Cir. 2011) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985)).

3

failed to "recognize[] the severity of the situation," (3) "failed to [immediately] notify outside authorities," (4) "failed to have the crime scene preserved," (5) failed to "cooperate in the investigation," and (6) was "extremely evasive" in the two post-incident interviews conducted by former Warden Janine Donate relating to the Pinto attack. (*Id.* ¶ 53; *see also* Doc. 54-4, Mooney Tr. at 80:24-84:14; 89:21-91:23; 99:10-100:16.) This led Interim Warden Mooney to his decision to demote Plaintiff. (Doc. 49, DSUF ¶ 54; *see also* Doc. 54-4, Mooney Tr. at 80:24-84:14; 89:21-91:23; 99:10-100:16.) On December 15, 2010, in an executive session, Interim Warden Mooney met with the County Prison Board and informed the Board of his decision to demote Plaintiff. (Doc. 49, DSUF ¶ 57; Doc. 54-4, Mooney Tr. at 113:11-115:20.)

On or about December 17, 2010, Plaintiff received a letter notifying her of her demotion from her Lieutenant position to Correctional Officer I status, effective December 18, 2010. (Doc. 49, DSUF ¶ 58; *see also* Doc. 53-4, Pl.'s Ex. D, at 3; Doc. 54-3, CarrollTr. at 12:17-12:20.) Plaintiff suffered a $20,000 pay reduction. (Doc. 54-3, Carroll Tr. at 297:1-297:3.) Plaintiff never physically returned to work at the Prison after December 15, 2010. (Doc. 49, DSUF ¶ 60.) She resigned from her position, effective September 2, 2011. (*Id.* ¶ 61.)

On or about November 26, 2012, the Pennsylvania Human Relations Commission ("PHRC") determined that, after investigation, Plaintiff's gender discrimination complaint "should be dismissed because the facts of the case do not establish that probable cause exists to credit the allegation of unlawful discrimination." (Doc. 48-3, Defs.' Ex. C, PHRC 11/26/12 Notice of dismissal of Carroll's complaint, at 1.) On May 3, 2013, the United States Equal Employment Opportunity Commission ("EEOC") adopted the PHRC finding and dismissed Plaintiff's gender discrimination claim. (Doc. 48-4, Defs.' Ex. D, EEOC 5/3/13 Notice of dismissal of Carroll's complaint.)

## II. Discussion

### A. Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine

4

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. *See Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 70 (3d Cir. 1996). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 247-48. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010). The moving party may present its own evidence or, where the non-moving party has the burden of proof, simply point out to the court that "the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When considering whether there are genuine issues of material fact, the court is required to "examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence

5

supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

In order to prevail on a motion for summary judgment, the non-moving party must show "specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing Fed. R. Civ. P. 56(e)). Although the non-moving party's evidence may be either direct or circumstantial, and "need not be as great as a preponderance, the evidence must be more than a scintilla." *Id*. (quoting *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

**B.     Plaintiff's Gender Discrimination Claim**

Count I of Plaintiff's Complaint raises a claim for gender discrimination under Title VII of the Civil Rights Act of 1964. Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff also raises her gender discrimination claim under the PHRA and the Equal Protection Clause of the Fourteenth Amendment. Courts within the Third Circuit apply the same analysis to gender discrimination claims under Title VII as gender discrimination claims under the PHRA and equal protection claims brought under section 1983. *Girard v. Aetna U.S. Healthcare*, No. 04-cv-5955, 2007 WL 710288, at *3 n.1 (E.D. Pa. Mar. 5, 2007) ("The courts of the Third

Circuit apply the same analysis to gender discrimination claims under Title VII and the PHRA.") (citation omitted); *Shaw v. Pittsburgh Bd. of Pub. Educ.*, No. 07-1183, 2009 WL 86709, at * 4 n.1 (W.D. Pa. Jan. 12, 2009) ("This jurisdiction applies the same legal analysis to discrimination claims brought under Title VII and equal protection claims brought under section 1983."). *But see id.* (noting that section 1983 discrimination claims have a more stringent "intent" requirement than Title VII claims, but explaining that the failure to meet the prima facie case under Title VII is fatal to a section 1983 claim) (citation omitted).

Gender discrimination claims brought under Title VII, the PHRA, and the Equal Protection Clause are governed by the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Stewart v. Rutgers*, 120 F.3d 426, 432 (3d Cir. 1997) (applying the *McDonnell Douglas* framework to analyze discrimination claims under the Equal Protection Clause*).* Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of employment discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). This requires a plaintiff to show that: (1) she is within a protected class, (2) she was qualified for the position, (3) she suffered an adverse employment action, and (4) the position remained open and was ultimately filled by someone outside the protected class, or a similarly situated individual outside the plaintiff's protected class was treated more favorably. *See id.*; *see also Doty v. Pike Cnty. Corr. Facility*, No. 3:04-cv-1742, 2006 WL 2850632, at *7 (M.D. Pa. Oct. 3, 2006). The determination of whether a prima facie case has been made is a legal one for the court to decide. *Pivirotto v. Innovative Sys.*, 191 F.3d 344, 347 n.1 (3d Cir. 1999).

Once a prima facie case has been established, the burden shifts to the defendant to produce a legitimate, non-discriminatory reason for his actions. *McDonnell Douglas*, 411 U.S. at 802. The defendant need not prove that the tendered reason *actually* motivated his behavior, since throughout the burden-shifting framework, the ultimate burden of proving

intentional discrimination always rests with the plaintiff. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (citing *Tx. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 254, 256 (1981)). This burden is "relatively light" and the employer need only introduce evidence which, taken as true, would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision. *Fuentes*, 32 F.3d at 763.

Once a defendant has put forth such a reason, the plaintiff must then show, by a preponderance of the evidence, that the defendant's proffered reason is pretextual. *Id.* Proving pretext places a "difficult burden on the plaintiff." *Carlson v. Twp. of Lower Alloways Creek*, 452 F. App'x 95, 100 (3d Cir. 2011). It requires the plaintiff to submit evidence that "casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication" or that "allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes*, 32 F.3d at 762.

Defendants argue that Plaintiff lacks factual support to establish her prima facie case. This Court agrees. Specifically, Plaintiff has failed to establish the fourth element of her prima facie case–that her position remained open and was filled by someone outside her protected class or that a similarly situated individual outside her protected class was treated more favorably. Plaintiff does not assert that someone outside her protected class filled her position when she was demoted, and there is not sufficient evidence to establish that similarly situated male Lieutenants were treated more favorably than she was. To be considered "similarly situated," a plaintiff must "prove that all of the relevant aspects of his employment situation are nearly identical to those of the . . . employees whom he alleges were treated more favorably." *Solomon v. Phila. Newspapers, Inc.*, No. 05-05326, 2008 WL 2221856, at *15 (E.D. Pa. May 21, 2008) (citation omitted). After reviewing the evidence in the light most favorable to Plaintiff, this Court finds that Plaintiff has failed to show that

similarly situated male employees were treated more favorably than she was.

While Plaintiff cites instances in which male employees were disciplined less severely than she was, the comparators and situations involving them are not similar enough to Plaintiff's case to support a finding of disparate treatment. First, Plaintiff argues that three (3) other male employees "actually were involved in the [Pinto] incident" yet "[n]one of the other 3 males were demoted and received a $20,000 pay cut." (Doc. 53, Pl.'s Opp. at 4.) However, none of these male employees–COs Jason Talutto, Michael Mallick, and Robert Jesso–were "similarly situated" to Plaintiff. Plaintiff concedes that all three (3) of these male employees were Corrections Officers, whereas Plaintiff was a Lieutenant (Doc. 49, DSUF ¶ 3), a position that is superior to the Corrections Officers and that entails greater responsibilities. Lieutenants are the senior highest ranking officers on site at the Prison. (*Id.* ¶¶ 2-4, 7-8.) Lieutenants are held to a higher standard and cannot be considered similarly situated as Corrections Officers. (*Id.* ¶¶ 2-4, 7; *see also* Doc. 54-4, Mooney Tr. at 46:14-46:23; 80:8-80:17. *Compare* Doc. 48-19, Defs.' Ex. S, Job description for Corrections Lieutenant, *with* Doc. 48-20, Defs.' Ex. T, Job description for Corrections Officer.)

In addition, the mere fact that the male COs were also "involved in the [Pinto] incident" is insufficient to establish them as "similarly situated." For example, there is no evidence showing that these three (3) other male COs engaged in the same conduct for which Plaintiff was demoted. As explained by Interim Warden Mooney, it "wasn't so much . . . the incident itself as what [Plaintiff] did *after* the incident and what she didn't do after the incident," that led him to his decision to demote Plaintiff, such as failing to have the crime scene preserved, failing to cooperate in subsequent interviews with the warden as part of the prison's investigation into the Pinto attack, and failing to take charge. (Doc. 54-4, Mooney Tr. at 80:18-84:14 (emphasis added).) COs Talutto, Mallick, and Jesso were not accused of failing to preserve the crime scene and did not fail to respond to questions at subsequent interviews

9

during the investigation into the Pinto attack. Therefore, there is no evidence that the reasons for Plaintiff's demotion applied to any of the male employees she argues were "similarly situated."

Second, Plaintiff cites to two male Lieutenants–Lieutenant Ferrone and McGraw–"who engaged in policy violations, who were not demoted and did not receive a $20,000 pay deduction." (Doc. 53, Pl.'s Opp. at 5-6.) Plaintiff argues that Lieutenant Ferrone was not disciplined after he was on duty when a female inmate gave birth in the Prison and Lieutenant McGraw was not demoted nor did he have his pay reduced when he was the officer in command when inmate Michael Simonson escaped the Prison. (*Id.*) However, again, Plaintiff fails to show how these Lieutenants were similarly situated to her. The situations she cites involves completely different scenarios. *See Anderson v. Haverford College*, 868 F.Supp. 741, 745 (E.D. Pa. 1994) (holding that to be deemed similarly situated, a plaintiff must show that he and the other individual "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it") (citation omitted). There is no evidence that either Lieutenant Ferrone or Lieutenant McGraw "engaged in the same conduct" that Plaintiff was demoted for, such as failing to preserve a crime scene or failing to cooperate in an investigation and failing to respond to questions relating to the incident. *See Doty v. Pike Cnty. Corr. Facility*, No. 3:04-cv-1742, 2006 WL 2850632, at *8 (M.D. Pa. Oct. 3, 2006). Additionally, even if the other instances were similar to the one at issue, there is no evidence that the alleged differential treatment was due to Plaintiff's gender. *See id.* at *7-*8 (granting summary judgment in favor of the defendants on the plaintiff's gender discrimination claim because, *inter alia*, there was no admissible evidence showing that the actions taken against her were motivated by gender). Finally, Interim Warden Mooney was not the Acting Warden at the time of these events, nor did he have any role at the Prison at the time of these

events. (*See* Doc. 54-3, Carroll Tr. at 159:4-160:4; 162:3-162:9 (prison birth occurred under the Administration of former Warden Janine Donate; escape of inmate Michael Simonson occurred under the Administration of Warden Robert McMillan).) Therefore, there is no evidence that he treated Plaintiff less favorably than similarly situated male employees.

Although Plaintiff argues that it was the Prison Board that demoted her rather than Interim Warden Mooney, Defendants accurately point out that there is no admissible evidence in the record to support such a statement, only inadmissible double hearsay statements that this Court need not accept.[2] *See Vecchio v. DeLuca*, No. 09-cv-1485, 2010 WL 3303826, at *4 (W.D. Pa. Aug. 20, 2010) (finding that "double hearsay evidence cannot be considered in support of plaintiff's opposition to summary judgment"). Thus, there is insufficient evidence in the summary judgment record for Plaintiff to establish her prima facie case of gender discrimination under the *McDonnell Douglas* framework.

However, even assuming Plaintiff were able to establish a prima facie case of gender discrimination, Plaintiff has failed to show that the proffered legitimate, non-discriminatory reasons for demoting her "w[ere] merely a pretext for unlawful discrimination." *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 319 (3d Cir. 2000). A plaintiff carries a "difficult burden" in demonstrating pretext. *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994). To establish pretext, a plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* at 764. The plaintiff

---

[2] Plaintiff claims that it was the Prison Board who demoted her because her brother-in-law, Michael Carroll, told her on either December 15 or 16, 2010, he contacted his friend and then Prison Board Member, Ken McDowell, who informed him that Plaintiff was being demoted. (*See* Doc. 54-3, Carroll Tr. at 316:1-316:25; *see also id.* at 316:22-316:25 (plaintiff confirming she was not present during the conversation between Michael Carroll and Ken McDowell).)

11

must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" *Id.* at 765 (citation omitted).

Plaintiff fails to demonstrate pretext. She has offered no evidence to show that her demotion was motivated by gender. Rather, the evidence in the record shows that Plaintiff was demoted because she failed to recognize the severity of the Pinto attack, failed to have the crime scene preserved, and failed to cooperate with the investigation of the Pinto attack after it occurred, in particular, by being evasive in subsequent interviews. (Doc. 54-4, Mooney Tr. at 80:18-84:14.) Plaintiff has offered no evidence to suggest that these reasons were not the actual reasons for her demotion. *See Slater v. Susquehanna Cnty.*, No. 3:07-cv-2304, 2011 WL 607452, at *5 (M.D. Pa. Feb. 15, 2011) (finding that the plaintiff failed to demonstrate pretext because she had no information that the warden fired her for any reason other than the testimony of her fellow officers that she violated facility protocol). Instead, Plaintiff has argued that the matter should be decided by a jury because the reasons for Plaintiff's demotion, other than the charge set forth in the Loudermill and demotion notices, were not memorialized in writing. (Doc. 53, Pl.'s Opp. at 7-9.) Plaintiff has offered no legal support for this assertion, except for *Sadowski v. Greater Nanticoke Area Sch. Dist.*, No. 3:10-cv-242, 2013 WL 1176254 (M.D. Pa. Mar. 20, 2013), which does not actually stand for the proposition that the lack of a written statement of the reason for the adverse action establishes that an employer has not stated a legitimate reason for the demotion. (*See* Doc. 53, Pl.'s Opp. at 7-8.) Rather, in *Sadowski*, Judge Mariani simply explained that the "Defendant has not provided ***any evidence*** of what the Board considered when deciding whom to hire," not that the evidence had to be written, and therefore the

12

disputed issue of what the Board's reasons were for hiring Plaintiff's replacement was to remain for trial. *Sadowski*, 2013 WL 1176254, at *6 (emphasis added). Plaintiff asserts that "when oral testimony is the only evidence that is offered as to the proffered legitimate reason, a jury could always choose to discredit it." (Doc. 53, Pl.'s Opp. at 9 (citation and internal quotation marks omitted).) However, as the Third Circuit has made clear, "[i]t is by now axiomatic that a nonmoving party . . . cannot defeat summary judgment simply by asserting that a jury might disbelieve an opponent's affidavit." *Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120, 130 (3d Cir. 1998) (citation and internal quotation marks omitted). Given the lack of any evidence in the record to show that Defendants' proffered reasons for termination were merely pretextual, Plaintiff has failed to satisfy her "difficult burden" of demonstrating pretext. *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994).

Plaintiff also argues that Defendants' proffered reasons for her demotion were too "vague and conclusional," noting that Interim Warden Mooney simply stated that Plaintiff "did not convince [him] that she had the ability and the leadership ability to remain as a lieutenant." (Doc. 53, Pl.'s Opp. at 10-12.) However, Interim Warden Mooney was more specific in his explanation. For example, he explained that Plaintiff "failed to have a crime scene preserved," that she "needed to have recognized the severity of the situation and acted completely differently," and that "she waited until she was told to contact outside authorities" to contact them. (Doc. 54-4, Mooney Tr. at 81:3-81:21.) He also emphasized Plaintiff's failure to cooperate with Prison officials during the investigation of the Pinto attack after it occurred, noting that during "[h]er subsequent interviews with the warden, initially with the warden, and then with the warden and the deputy wardens, she was extremely evasive." (*Id.* at 82:2-82:4.) He further explained that Plaintiff "responded in the first interview that she wasn't going to answer questions other than what was in her statement. And then in the second interview, the same thing, that she was not going to answer questions other than

13

what was in her statement." (*Id.* at 82:4-82:9.) Interim Warden Mooney explained that this was a violation of Plaintiff's "ethical obligation to cooperate with the investigation" – that "as the commissioned officer in charge of that situation, she needed to take charge" yet "[s]he didn't do that." (*Id.* at 82:14-82:18.)

Additionally, Plaintiff's Equal Protection claim brought pursuant to section 1983 has a more stringent intent requirement than Title VII claims. *See Shaw v. Pittsburgh Bd. of Public Educ.*, No. 07-1183, 2009 WL 86709, at *8 n.1 (W.D. Pa. Jan. 12, 2009). As explained above, Plaintiff has failed to set forth any evidence demonstrating purposeful discrimination on the basis of gender. Therefore, this claim must fail as a matter of law.

Accordingly, the Court will grant Defendants' Motion for Summary Judgment as to Count I of Plaintiff's Complaint.

## C.     Plaintiff's Stigma-Plus Claim

The Supreme Court has long recognized that an individual has a protectable interest in his reputation. *See Wisconsin v. Constantineau*, 400 U.S. 433, 436 (1971). To make out a section 1983 claim for deprivation of a liberty interest in reputation, "a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006). Under the "stigma-plus" test, "[t]he creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination is the 'plus.'" *Kocher v. Larksville Borough*, 548 F. App'x 813, 819-20 (3d Cir. 2013). The Third Circuit has described this threshold analysis as a "formidable barrier," and emphasized that "reputation alone is not an interest protected by the Due Process Clause." *Clark v. Twp. of Falls*, 890 F.2d 611, 619 (3d Cir. 1989).

In order to satisfy the "stigma" prong, a plaintiff must show that (1) the stigmatizing statement was made publicly, and (2) the statement was substantially and materially false. *Kocher*, 548 F. App'x at 820. Courts within the Third Circuit have consistently found that "no

14

liberty interest of constitutional significance is implicated when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance." *Fox v. Cheltenham Twp. Auth.*, No. 12-716, 2012 WL 2273424, at *4 (E.D. Pa. June 18, 2012); *see also Young v. Kisenwether*, 902 F.Supp. 2d 548, 558 (M.D. Pa. 2012) (same); *Chinoy v. Pa. State Univ.*, No. 11-cv-1263, 2012 WL 727965, at *4-*5 (M.D. Pa. Mar. 6, 2012) (dismissing a due process claim because alleged statements regarding professional competence are insufficient to satisfy the "stigma" part of the "stigma-plus" analysis); *Kohn v. Sch. Dist. of Harrisburg*, 817 F.Supp. 2d 487, 498 (M.D. Pa. 2011) (dismissing due process claim because statements concerning competency and job performance are insufficient to satisfy the "stigma" part of the "stigma-plus" test); *Poteat v. Harrisburg Sch. Dist.*, 33 F.Supp. 2d 384, 393 (M.D. Pa. 1999) (explaining that "charges of incompetence do not implicate the liberty interest a public employee has in the manner of discharge").

Here, Plaintiff has failed to provide evidence to satisfy the "stigma" prong of the test. In denying the Defendants' motion to dismiss Plaintiff's stigma-plus claim, this Court found that Plaintiff's allegations that "any representation that Plaintiff caused the Pinto attack is untrue" was specific enough to plausibly set forth a claim of entitlement to relief. However, now that this Court has the full summary judgment record to analyze this claim, this Court finds that Plaintiff has failed to provide any evidence to support this allegation that any of the Defendants made representations that Plaintiff caused the Pinto attack.

Specifically, none of the three (3) purportedly "defamatory" news articles that Plaintiff attaches to her opposition to Defendants' Motion for Summary Judgment include representations made by any of the Defendants that Plaintiff caused the Pinto attack. (*See* Doc. 53-5, Pl.'s Ex. E.) Nor do they contain any false or stigmatizing statements about Plaintiff. This Court will address each of these articles in turn. The relevant excerpt of the first article, "Lackawanna County Prison warden resigns" from citizensvoice.com, simply

15

states that Plaintiff was on duty on the day of the Pinto attack and that she would face due-process hearings and potential disciplinary action, all of which are true:

> The Board also disclosed that four prison employees–three corrections officers and a supervisor–who were on duty when Michael Simonson allegedly stomped fellow inmate Nicholas Pinto on Aug. 8 will face due-process hearings and potential disciplinary action. . . . The board identified . . . the supervisor as Lt. Nancy Carroll.

(*Id.* at 1.)

The relevant excerpt of the second article, "Warden resigns post at Lackawanna County Prison" from TheTimes-Tribune.com, also identifies Plaintiff as being on duty on the day of the Pinto attack, and notes that her hearing will be handled administratively and could result in disciplinary action, all of which, again, is true:

> The Board also disclosed that four prison employees–three corrections officers and a supervisor–who were on duty when Michael Simonson allegedly stomped fellow inmate Nicholas Pinto on Aug. 8 will face due-process hearings and potential disciplinary action. . . . The board identified . . . the supervisor as Lt. Nancy Carroll. . . . Prison board solicitor David Solfanelli said the hearings for the three guards will be handled in accordance [sic] their union's collective bargaining agreements. Because she is not a member of the bargaining unit, Lt. Carroll's hearing will be handled administratively, he said. Mr. Solfanelli said the hearings could result in disciplinary action against the four. Mr. Washo said discipline is not a certainty, pending the outcome of the hearings. "I don't know what is going to result," Mr. Washo said. "They will have a chance to make their case." . . . But [Sgt. Bill Shanley, president of the prison employees union] said [Mrs. Donate's] departure will not solve the issues that he believes contributed to the assault, including inadequate staff and training and the inconsistent application of policies and procedures, and that union has tried to bring to the attention of the prison administration and the board.

(*Id.* at 2-3.) Although this article also references "inadequate staff and training," it does not specifically identify Plaintiff as part of the staff that is considered inadequate. Additionally, employer representations of "inadequate performance" fail to satisfy the "stigma" prong of the analysis. *Young v. Kisenwether*, 902 F.Supp. 2d 548, 558 (M.D. Pa. 2012).

The relevant excerpt of the third article, "Warden in Pa. prison inmate beating case resigns" from CorrectionsOne News, simply notes that "mistakes were made by prison management," but does not identify Plaintiff as part of that management, nor does it assert that Plaintiff was responsible for the Pinto attack:

16

> Matt Balas, the guards' union representative, declined comment on the actions of the guards but said the union has the option of filing a grievance if it believes they are being disciplined without just cause. "I don't know all the facts concerning our members. I know mistakes were made by prison management," he said. We had a labor-management meeting 10 days before this incident and we warned them about this exact situation. We warned them there was the potential for something to happen."

(Doc. 53-5, Pl.'s Ex. E, at 4.)

In sum, none of these excerpts make any representation that Plaintiff, Nancy Carroll, was responsible for the Pinto attack. There is no evidence in the record to support Plaintiff's allegation that "Defendants disclosed Plaintiff's name to local media outlets ***accusing her of wrongdoing*** associated with allowing the criminal act of an inmate beat down by another inmate." (*See* Doc. 39, Compl. ¶ 27 (emphasis added).) The first two articles simply identify Plaintiff as being "on duty" on the day of the Pinto attack, which Plaintiff herself has admitted as true. (*See* Doc. 54, Pl.'s Answer to Statement of Facts, ¶ 3.) At most, the third article notes that "mistakes were made by prison management," but Plaintiff is not identified as the "prison management" referenced in this representation. (*See* Doc. 53-5, Pl.'s Ex. E, at 4.) Although Plaintiff also argues that the "circumstances surrounding [her] demotion surely indicate that she was involved in the criminal act of allowing an inmate beat down by another inmate," (Doc. 53, Pl.'s Opp. at 19), her subjective impression of how these news accounts would be interpreted by the public, in the absence of actual false and stigmatizing statements, fails to satisfy the "stigma" prong of the "stigma-plus" test. *See, e.g.*, *Lockett v. Pa. Dep't of Corr.*, 529 F. App'x 294, 295-97 (3d Cir. 2013) (affirming dismissal of Plaintiffs' stigma-plus claim because her argument that news accounts that the prison was moving in a "new direction" the day after her employment was terminated amidst media scrutiny of alleged sexual abuse at the prison failed to give rise to a stigma-plus claim).

There is also evidence of television news broadcasts on WBRE and WNEP concerning the Pinto attack. (*See* Doc. 48-9, Defs.' Ex. I.) However, like the three (3) news articles referenced above, these broadcasts do not contain any false and stigmatizing statements about Plaintiff. They merely state that Plaintifff was on duty on the day of the attack and that due process hearings would follow, both of which were true. The news

17

broadcasts also note that there were "lapses in judgment by guards," but does not reference Plaintiff as having "lapses in judgment." (*See id.*) Additionally, as referenced above, general employer representations of inadequate performance or incompetence fail to satisfy the "stigma" prong of the analysis. *Young v. Kisenwether*, 902 F. Supp. 2d 548, 558 (M.D. Pa. 2012).

Plaintiff also suggests that her Loudermill hearing notice satisfies the "stigma" prong of the "stigma-plus" test. (*See* Doc. 53, Pl.'s Opp. at 20-21.) Plaintiff emphasizes that the notice specifically stated:

> The County has evidence that you failed to maintain a standard of conduct in the performance of your duties on August 8, 2010, concerning the incident involving the assault of inmate Nicolas Pinto. Your conduct may have violated a standard which the County may reasonably expect of its correctional officers and constitutes a serious matter.

(*Id.*; *see also* Doc. 53-4, Pl.'s Ex. D, at 1.) Plaintiff argues that this representation is false and stigmatizing. (*See* Doc. 53, Pl.'s Opp. at 21.) However, nothing in this representation is sufficiently false or stigmatizing to implicate a liberty interest. It simply suggests "improper or inadequate performance, incompetence, or neglect of duty," none of which are "sufficiently serious to trigger the liberty interest protected by the Constitution." *Maule v. Susquehanna Reg'l Police Comm'n*, No. 04-cv-5933, 2007 WL 2844587, at *11 (E.D. Pa. Sept. 27, 2007) (quoting *Wojcik v. Mass. State Lottery Comm'n*, 300 F.3d 92, 103 (1st Cir. 2002)). Because this Court finds no evidence in the record to support the "stigma" prong of the "stigma-plus" test, Plaintiff's stigma-plus claim fails as a matter of law and this Court need not address whether the "plus" prong of the analysis has been satisfied. Defendants' Motion for Summary Judgment on Count II will be granted.

**D.      Individual Defendant Liability**

Because Plaintiff's gender discrimination and stigma-plus claims fail as a matter of law, Count III alleging individual liability against Defendants O'Brien, Washo, and Munchak must also fail and this Court need not address Defendants' argument that they are entitled to qualified immunity.

18

### III. Conclusion

For the above stated reasons, Defendants' Motion for Summary Judgment will be granted.

An appropriate order follows.

September 16, 2015  /s/ A. Richard Caputo
Date  A. Richard Caputo
 United States District Judge